Good morning, Your Honor. My name is Patricia Berry. I represent the appellants, and Terry and Eddie Elwood, the parents, and Darla Elwood are present in court today. May it please the court. What I'd like to do is first talk about the case called Elwood v. Morin, the Attorney Fee Appeal 0455630. And what I depend on for a reversal that the case was not frivolous is the fact that I thought I had a conspiracy, or at least the most important element, as the judge found that's found at AER7, the willful participants in the concerted action. Probably one of the three tests that the Ninth Circuit uses to determine whether or not a conspiracy existed. And for that reason, I do not see how that the conspiracy claim for which attorneys' fees were ordered could have been frivolous. Again, I reemphasize that Judge Barrett found that the facts of the complaint sufficiently pled that the defendants were willful participants in concerted action to deprive Darla Elwood of her equal protection and due process rights under the 14th Amendment. Then the other cause of action, which was Civil Code Section 49A, in her initial decision, Judge Barrett said that there was a dearth of cases, and I argued that it was one of first impression. In addition, the facts were not adequately reflected and repeated in the decision. The taking of the child occurred secretly, without court order, without a warrant, and with no court petition pending. Then, and what I depend on most, is that in the Boyle appeal, number 0255, number 02, I can't think of the case number now, 55, excuse me, 5507, I think it is, the Ninth Circuit mediator, an attorney who I assume would be among the best of the highly qualified working for this prestigious court of appeals, nominated Mr. Boyle's case for inclusion in the mediation program. And I received permission by court order to argue this, or that this portion of my argument would go to this panel to determine whether or not the case was frivolous. And because it was nominated for inclusion, my position is that I have a reasonable not just a reasonable attorney, but somebody with the authority of the Ninth Circuit willing to nominate the case for settlement. There is, obviously, she thought that I had pled a sufficient claim against Mr. Boyle, which was identical. He was a part of this conspiracy that I allege in the Fifth and Sixth causes of action. And clearly, he or she believed that I would have the facts, given what I had already pled, which was a fact-intensive First Amendment complaint, that I had stated at least a good enough claim that she thought or he thought, I forget if it was a man or a woman, thought that there was a chance of reversal such that he or she was willing to nominate it for inclusion in the mediation program. It failed. We went forward. And then finally, I want to say, at no time did any judge or anybody ever warn me that any of my claims were frivolous. I might acknowledge that the fourth cause of action, the Court had said that I had pled sufficient facts against Mr. Moran and Mr. Delaplane, the two fathers, such that they could be ‑‑ I could pursue a claim for making false claims of child abuse against my client, Della Elwood. Those claims of false child abuse formed the factual basis in large part for the conspiracy claim. So when it was pled under a State claim, she found sufficient facts for it to go forward and, of course, refused to award attorney's fees. Now, I'd like to talk a minute about 0455635. Again, I have the Ninth Circuit, as far as I'm concerned, backing me up. We have the law of the case doctrine, and not one appellee ever addressed the fact that three distinguished jurists, your colleagues, Judges Levy, Rollinson and Hawkins, on July 28, 03, determined that my briefs in the opening of the case were awarded in the 0256917 case, which was the appeal of the 024656 case, from which attorney's fees were awarded, and now make the appeal of the order dismissing the case, right? Yes, Your Honor. That affirmed the order dismissing the case. No. What I'm talking about now was Judge Rollinson, Judge Levy and Judge Hawkins denied the three appellees' motions for summary affirmance. They were claiming there's no merit, don't let her go to a full panel, this doesn't deserve the full consideration by the Ninth Circuit. Just in the ---- Our threshold for that is awfully low. Oh, it's awfully low? It would be very odd for us in a civil case to summarily affirm if it just weren't plain on the face of the pleadings. Well, I'm not going to ---- all I'm saying is I'm not sure you can draw much significance from that order. Well, at least the ---- what the three jurists did say, Judge ---- It's a motions panel, and ---- Right. And then, sure, I mean, they denied the motion for summary affirmance. But they also noted that my appeal briefs had merit, Your Honor, and I think that's important, and view the facts on remand, that it was found to be frivolous. But they did take a close look and found that they weren't going to grant those motions for summary affirmance, and they were arguing, in effect, frivolousness and so on, and they ---- and those three judges said, nope, there's merit to these ---- to all of the issues raised in that particular appeal, which was the 024656 case involving the five jurists, Mr. Drescher and Ms. Hutchinson. The other thing that I depend on is that there, since Kay v. Erler was decided, the U.S. Supreme Court case on awarding attorney's fees to improper litigants, there has never been a case since Kay v. Erler was decided that an improper litigant, whether an attorney or non-attorney, whether plaintiff or defendant, in all of the cases in which an award of ---- there's a fee-shifting statute, and I have supplied all of those cases, and I found one last night looking for it. But in any event, there are no cases that I'm aware of that an improper litigant, whether attorney or non-attorney, was able to get attorney's fees. What do we do ---- deal ---- how do we deal with Ellis? I know it was pre-Kay, but how do we deal with it? It's a binding circuit precedent. Well, that's a 1980 case, and I couldn't find any subsequent Ninth Circuit discussion of awarding fees to an improper, prevailing defendant in the 1988 situation. However, I cited that Eastern District of Pennsylvania case, DiPaolo v. Moran, or Moran, or ---- I have it in my brief, Your Honor. And in that case, they said that they felt ---- I cited at page 54 of my brief, in DiPaolo, D-I-P-A-O-L-O v. Moran, they said that they felt that the validity of Ellis was in doubt because there was no discussion of the agency relationship, that is, of an attorney-client relationship having been created. And that was not discussed in Ellis v. Cassidy, and that's primarily on what the Supreme Court relied in order to hold that the successful improper attorney litigant in the Title VII case, in the Kay v. Erler case, was not entitled to attorney's fees. And in DiPaolo v. Moran, he declined to sanction the prevailing pro se attorney relying on an Eleventh Circuit case, which I also cite in the brief, Massengel v. Wray. And because the Ninth Circuit never revisited this issue, I would submit that Kay v. Erler would be the definitive case on which to determine whether Ellis v. Cassidy is good precedent or not at this time. Ellis v. Cassidy was decided in 1980. Right. The difference between the two cases, and obviously a three-judge panel normally can't overrule precedent, but can if there's an intervening Supreme Court decision. The question is whether Kay is controlling or not. The difference, it seems to me, in Kay, and one that we'll have to explore, is this. Kay talked about the statutory history of this particular rule and applied it to pro per plaintiffs. I'm not sure the same rationale applies to pro per defendants who are attorneys because they're different incentives. That may or may not make any difference, and other circuits seem to support your view of this. But that's just something we have to look at in reevaluating Ellis. Well, Your Honor, I submit that the lawsuit brought against Mr. Drescher was not the same case in which he sought attorney's fees initially in his motion to dismiss. It was denied by Judge Baird. And furthermore — For fire to consult, right? No. That was another situation. He sought attorney's fees. That's what I recall now. Okay. And then the other issue was when he finally did file a motion for attorney's fees, he, like Ms. Barrientos, did not do the local rule. Yeah. Okay. Now, I can tell you, Your Honor, I didn't cite it in my brief, but I did find SEC v. Waterhouse, 41 Fed 3, 805, Second Circuit, 1994, and it determined under Kay v. Earler that the prevailing defendant, he was an improper attorney defendant seeking attorney's fees under the Equal Access to Justice Act. And the Court found all of the factors present to make an award of fees, but said he — they could not because of Kay v. Earler. They found there was no substantial justification for the Court's position. And it squares on all fours with our case, except my position is that my case was never frivolous in the first place, for the reasons I've argued in my brief in here. But I think this is very important because it was the only one I found that came so close to our situation, improper attorney litigant prevailed in, I don't know, I guess that would be a — it's definitely a fee-shifting statute, it's a civil rights statute, Equal Access to the Justice Act, and they did award him expenses. But they said, no, their hands were tied by Kay v. Earler. So Mr. Kaufman described in numerous cases as an attorney, improper defendant litigant, could not get attorney's fees. Now, I'd like to talk a minute — did anybody have any questions? I was going to move now. Roberts. No, you can proceed, yes. Okay. Do I have eight minutes? All right. I want to talk really fast about my denial of attorney's fees in the 0555727 case that was combined with the 0577 — I'm sorry, 055724 case. Now, there was a pattern of harassment in terms of the enforcement of judgment. They started out with the — they started out with the debtor's exam, didn't ask her any questions, didn't demand documents that would establish the more Morrison community interest, which was minuscule in any event. But they didn't even ask for those documents. Then I came along and submitted what I thought was a great brief in September in the 0455630, and then in October, they're filing their notice of levy, and they're filing their — that third-party garnishment. And that third-party garnishment — I'll get into that in just a minute — is a nightmare. You could not figure it out. In fact, I'll give you a guidance. If you take down — if I try to explain to you verbally, you're going to go, Ms. Berry, you're driving us nuts. Well, they drove me nuts. And I think it was totally related, because they knew I was doing all this pro bono work for Ms. Elwood, and there were all kinds of things happening, which I supplemented and put into the AER, and they weren't stricken. But it shows the relationship between what they were doing in the enforcement action and what I was doing in other cases. The two attorney fee appeals in this case, the Warren child custody litigation, the Delaplaine child custody litigation, all of that was going on. And each time I took a step in that case, they were coming up against me in this — in this enforcement of litigation. So why — Yes, Judge. I don't understand. You sought sanctions under 1927. Is that right? 1927. Well, how does 1927 apply to their efforts to enforce their judgment? Well, because, first of all, nothing ever came of them, number one. Number two, the — That's really not an answer, is it? Well, I think it is an answer when you look at the method that they employed. In other words, you can — I'm — what I'm saying, and I think 1927 says, it's like an abusive process. They had a right to enforce a judgment, but they did it for a malicious motive, because they knew that my client, and in fact, Mr. Cook described my client as an insolvent. He admitted that she didn't have any assets, and still pursued these worthless enforcement. Now, when you do the notice of levy, for example, like Judge Barrett said, well, Ms. Berry, so what if the notice of levy was not in James Delaplane's home? And then she cited the statute that says if the notice of levy is not in the judgment debtor's name, that's not going to cause the enforcement action to fail. But guess what? The third party was the homeowner. This is the fellow who owned the home. And this was not a fraudulent conveyance, as the folks on the other side will try to persuade you. It was a home that Mr. Delaplane had purchased as a single man prior to getting married, something like maybe a year or half year before they married. And her name never went on the deed. So what he was trying to do was say, oh, well, we're going to prove up her community interests without having done the discovery to establish the more Marsan interests. Now, it's a simple arithmetical computation, but it's gotten very complicated. They have to figure out what he bought it for, what was the pay down of the principal, what was owed at the time of the first refi, and then what was owed at the second refi, and so on. Those would have been all the kind of information that he should have been seeking if he was serious about doing this. The other issue I want to enforce or bring up is the fact that I kept saying, look, the marshal's office doesn't do the notice. Your own levying officer has to do it, and therefore it's left up to the attorney to act immediately within 20 days. And my position is the levy should have been quashed, not only because it wasn't in the homeowner's name, but because he waited for four or five months to try and sell the home. Kennedy. Well, it all sounds very, very complicated. And you have to ask the question, where did Judge Baird abuse her discretion in denying the appellate fees? Motion to quash because the No, no attorney's fees. Oh, on the attorney's fees? Sanctions, yes. On the sanctions? Where did she abuse her discretion? Because of — I detailed at — let's see. In the — in the AER, I detailed all of the extra work I had to do because of the way they pursued it. For example, in the writ of garnishment, there is no writ of garnishment. And I'd like to, if I could quickly, Judge Schwartz, to answer your question, demonstrate to you how confusing it is by referring to the supplemental — the supplemental exhibits — I'm sorry, the supplemental documents that were provided by the opposing counsel in conjunction with mine. Now, there was a writ — there was an affidavit for writ of execution for Mr. Drescher. That's the 024656 case. They never did the 024656 case. They put it in this 024655 case. So I'm going, what are they talking about? I couldn't figure out what was going on. So he gets a writ of execution in the 06 — the 024655 case, and I'm going, what's going on here? But it was for Mr. Drescher. The instructions that they put into evidence for you to look at to the U.S. Marshal was in the Morin case. The proofs of service that they supplied are in the Morin case, which is the 018582 case. My position is, if you're going to do a writ of garnishment in the 024656 case, you have to have proofs of service, you have to have instructions to the Marshal that it's Elwood versus Drescher 024656. If you go to my AER 113-30, and then you try to compare that to the supplemental appellee's ER at 7 through, I think, 19, you're going to be as confused as I am. I can't even tell if there was a legitimate garnishment. Well, given all of that confusion, can you say that it was an abuse of discretion for her to conclude that there was no malice, because malice is required for 1927? I would say there is malice, because I argued at the trial court below and in my case, they were double-teaming me. They figured, okay, well, Distractor, I was late getting the brief in to the 0455635 case. I didn't get it filed until December. The trial in Morin v. Elwood, which was a PF 1184 case in State court, was moving along at the same time that they did the no-notice of levy. Remember, they're trying to take her husband's house away from her. We were just freaking. At the same time, I'm supposed to be getting ready for a custody trial with Mr. Morin. And then he waits five months to try and sell the house, and Judge Carney, within a month, says, no, you're out the door. Then when I filed the racial violence complaint against Morin in State court on May 2nd, 2005, get him served in July of 05, they're hitting Darla with a motion for some kind of rollover. I mean, it was – I never heard of that in enforcement action. Judge Carney was puzzled by it, and he didn't even demand that I file an opposition and threw it out of court. Not happy with that, then they started an SPDT, subpoena ducas take him, to get information on a car. So I had to put in an objection. Then it seeped over to the Morin litigation that was represented by another attorney, Mr. Kotler. The malice was definitely there. Mr. Morin, in our pleadings, and this has never been controverted, said, I'm going to get even with you for getting involved with and marrying this guy that you married. And here was the guy that he's trying to take the house away from while we're trying to fight on the custody issue in State court. So then, here I am trying to juggle all of this together. Nothing ever comes of this, because they were on notice from her debtors' exam, she had no assets. I would say, Judge Schwarzer, that is malicious abuse of process. Do they have a right to enforce a judgment? Yes. But do they have a duty to conduct proper discovery so they could at least determine the Moore-Marsden? Because upon analysis, there is not sufficient Moore-Marsden for a real bid to go through that could satisfy Mr. Morin's $14,500 in attorney's fees. So while they're hitting me with this enforcement of judgment, and by the way, it took me hours to research, I have that set out in the AER, in the motion to Quash, I set out all the extra work we had to do. Ms. Kim was completely, as I put in my declaration, was completely like, what is going on here? And we had no idea where the service was of Mr. Delaplein on the third-party  Your time has expired. All right. Thank you. Let me just gather all this up. Thank you, Counsel. Do we have a time allocation from the other side? Yes, Your Honor, we do. Thank you. I'd like to reserve 10 minutes for myself. My name is Robert Treasurer, I represent Mr. Morin and myself. Five minutes for the Deputy Attorney General to address her issues in regards to the state jurists. Three minutes for Ms. Brenner, who represents the county and the county employees. And then two minutes for Mr. Perkins, who will address the issue as to the enforcement of the judgment. Okay. Thank you. Good morning, Your Honor. May it please the Court. My name is Robert Treasurer. I am here in both two capacities, one as an attorney representing a client, one as  Before I get into the bulk of my argument, let me address something that this panel just brought up, and that is the case of Kay. And it's a very important distinction that this court needs to address, the difference between Ellis and the difference between Kay. I think I understand the difference, but Kay seems to cut a pretty wide swath, and other circuits have agreed with your opponent that Kay ought to be applied equally to defendants and plaintiffs. Tell us why we should go against the tide. Certainly, Your Honor. And if this court would review the May 25, 2004 order from the district court, the district court went to great lengths specifically to distinguish Kay. And if I can basically do it in a nutshell, what Kay addressed was a case that had merit. This case had no merit. And Kay basically said that the same policy considerations do not exist when the proper attorney litigant is a prevailing defendant rather than a prevailing plaintiff. Ensuring that a defendant attorney obtained counsel does not help to filter meritless claims nor ensure vigorous prosecution of meritorious ones. If the court would remember that one of the holdings of Kay was that the statutory policy was to kind of force everybody to hire an attorney. And what the district court did on May 25, 2004 in awarding the attorney fees to the That may be, but in a case where there has no merit, it has no purpose. And, in fact, it said the court goes on to say, in contrast, awarding attorney fees to prevailing defendants protects them from burdensome litigation with no legal or factual basis, exactly as this court held in its initial affirmation of the appeal of the judgment, and we are now faced with that issue again. This court found in 2004 initially that the claims of the plaintiffs had no merit, had no factual findings, and, in fact, were vexatious. The district court in awarding its attorney fees made it clear that the claims lacked factual support, were vexatious, were brought only for the sole purpose of annoying and harassing and vexing Mr. Marin. And the court made it clear in its award of its attorney fees on the March 25, 2004 order that K did not apply because, again, we're dealing with a meritless claim, not a claim that had merit. And the whole purpose behind K and Ellis was to prevent frivolous claims moving forward. Now, I, as a pro per defendant and attorney, did have to exhaust a substantial amount of hours from my busy practice. And as the court held in 1980 in K, sorry, in Ellis, it said that the award of attorney fees was either frivolous or harassing litigation, exactly what we have here in front of this court. That the appellees have actually suffered pecuniary loss since they have been required to take time away from their practices to prepare and defend the lawsuit. Again, identical to this case. That legal service have actually been performed. The appellees did not seek out a chance for pro se litigation to compensate for an inactive practice. They were forced to defend against frivolous claims by a plaintiff who was apparently bent on endless litigation. Again, identical to this case. If this court reviews the records, we have had five constant years of litigation. The appellee, Mr. Marin, has had to endure case after case after case being brought forth by Ms. Elwood through the services of Ms. Berry. This is the second time that we have appeared in front of this panel. We have also been in front of the Second District Court of Appeals in the state case. Ms. Berry also did a writ of certiorari to the United States Supreme Court. Not to mention the countless state court actions and federal court actions being brought by Ms. Berry. Each and every one of them has ended the exact same way in favor of Mr. Marin. And again, we are here again, your honors, for another frivolous matter. My client has had to endure five years of this. And we ask for attorney fees on this appeal as well as upholding the attorney fees awarded in the district court. This is not a case of first impression. This is not a case of domestic violence. This is a case of a vindictive, vexatious litigant who is bent on harassing Mr. Marin and continues to do so year after year. In the end result, your honor, there is no abuse of discretion in this case. In order for this court to find abuse of discretion, they would have to find that the district court either misapplied facts or made a gross error at law. There is none. This was pure discretionary. The trial court sitting in judgment over the thousands of pages of documents  of the plaintiff in all the cases had no legal foundation, had no merit, had no facts to support it, were vexatious and harassing, and brought forth for the sole purpose of harassing, annoying, and vexing Mr. Marin. And for that reason, the district court ordered attorney fees to be paid. This court rarely issues attorney fee awards in civil rights cases because of the fact that there's an overriding policy not to do so, because it could quell or quash a person's right to address the government, to address wrongdoings. However, a review of this record will show that time after time, what has been occurring is that the plaintiffs have been attempting to relitigate child custody matters in federal court. They have brought judges, commissioners, and because they have the audacity to rule against them. If this court reviews the record, they will see that every single jurist, every single member of the county, and even myself, have successfully represented or ruled against the plaintiffs in every matter brought forth in every forum. What has occurred is the plaintiffs are attempting to use this court as a sword, not a shield. Do you concede that Ms. Elwood is insolvent and unable to pay the fees at this point? No, Your Honor, we do not concede that for the following reasons. We believe, and will be proven at trial, that there was a fraudulent conveyance of the house that she lives in. If the record would show, it will show that the residents' asset or any other assets. She's also driving around in a brand-new $70,000 Lexus, and her husband drives around in a $65,000 car. If somebody is as insolvent as she claims, she certainly lives high enough on the totem pole. I realize this is outside the record, but I addressed you. You say you don't concede insolvency. No, Your Honor. I do not believe that she would be found to be insolvent at all. And that's one of the problems that they've been fighting so vigorously. And Mr. Perkins will address that specific issue as to the enforcement. I have not had much to do with that except read the pleadings. And I do know as a fact, as to some of the facts of the information outside the record, but in my opinion, there's not a competent jurisdiction that would find her to be insolvent. She hasn't even filed bankruptcy, which would have been, if she truly is insolvent, she should have used the power of the court to declare bankruptcy, which she has not done. So that in itself is an outward manifestation that she would not be able to prove insolvency. You have a little over two minutes left. Okay. Well, Your Honor, I would like to save that for my esteemed colleagues if they would need to, unless there's any questions of the panel. In conclusion, just basically, that this is not a frivolous – these matters were completely frivolous. They were brought for an ill purpose, no factual basis. The district court found them to be frivolous, vexatious, and brought forth to annoy Mr. Moran. They properly awarded attorney fees. There's no abuse of discretion in this matter, and request that this Court uphold and affirm the attorney fee awards and also award attorney fees and costs for bringing forth this appeal. Thank you very much. Roberts, we'll hear from the Attorney General. Good morning. I am Sandra Barrientos, Deputy Attorney General from the California Department of Justice. I hear – I am here representing Commissioner Robert Saccone, Judge John Farrell, Judge Haye Kahihian, Judge William McLaughlin, Referee Valerie Skiba, and the California Department of Justice. In the underlying case, the plaintiffs in that case brought the case against the jury because they just simply didn't like the court – the trial court's rulings. And throughout the litigation, which was only a motion to dismiss, the plaintiffs accused the jurist of hanging their hat on the trilogy of cases, Rooker-Feldman and Younger abstention. They never conceded that those were hurdles that they had to surpass before proceeding with their lawsuit. They just chose to ignore the law. They never argued or presented any facts or law as to why those doctrines didn't apply. Well, let's take Rooker-Feldman. If your conclusion is correct that these claims were borrowed by Rooker-Feldman, you're not entitled to fees, are you? Your Honor, I am because they were brought under 1983. The entire lawsuit was brought under 1983, and the – I understand that. But if the claims are borrowed by Rooker-Feldman, Rooker-Feldman's jurisdictional, how can you recover fees on a jurisdictional argument? Well, Your Honor, because we were required to defend him. And the case was brought under 1983 for civil rights, and the law, 1988, says that if you prevail in a lawsuit for 1983, you may be entitled to attorney's fees. Now, not all the claims were borrowed by – Do you have a case that ever awarded fees that were – on a case that was dismissed on the grounds of Rooker-Feldman? I believe Franceschi v. Schwartz. I don't recall exactly if that's the case, Your Honor, but that involved judicial immunity, which wouldn't be a jurisdictional issue. That would be – Not a jurisdictional issue. That is not jurisdictional. That would be correct. Now, if that's the question, and I'm afraid I don't have legal authority to support my position, it is that it was brought under 1983. Well, that doesn't really answer the question. That is correct. If there is no jurisdiction, then you wouldn't be considered a prevailing party. So therefore, you wouldn't qualify under 1988. My next point was going to be not all the jurists were absolved from this based on Rooker-Feldman. There was younger abstention also on some of these cases. But isn't that a jurisdictional defense as well? Younger abstention, I believe it's not. The Rooker-Feldman is a jurisdiction. I think younger abstention is considered a, we may have this, but we're not going to abstain because it's an ongoing State proceeding. Now, the plaintiffs in the underlying case never objected to the attorney's base based on the Rooker-Feldman being a jurisdictional issue. So I'm afraid that I am not prepared to address that. And I do apologize to the Court for that. It's a problem, I think, with the Rooker-Feldman. With younger abstention, I'm not sure it's jurisdictional, but on the other hand, it's not ruling on the merits either. I mean, you're not saying it's frivolous. You're saying, no, we have ongoing State proceedings. So conceptually, it's like Rooker-Feldman, because really it's not a determination of who the prevailing party is, right? Well, Your Honor, the problem I have with the whole analysis where we're heading is that under, in that scenario, then anyone would be entitled to bring a 1983 lawsuit against a jurist without knowing that this cannot happen, just in order to either try to stay the State court cases or in another way try to vex the State court jurist. And in that matter, just saying it's a 1983 and it's jurisdiction, so you don't get to prevail because you don't you the Federal court doesn't have jurisdiction over this matter. The State court jurist doesn't get to prevail because you don't you the Federal court doesn't have jurisdiction over this matter. We did win. And throughout, they never addressed why. I mean, this is the problem. She kept saying, we have a prima facie case. If you have a prima facie case, then it assumes that you said enough things to overcome those hurdles, to set up enough facts or why the law should be changed to become over those procedure hurdles, but that was never the case here. And then in bringing this appeal, they argue that they are entitled to attorney's fees, and because the district court abused her discretion in allowing me to refile that motion for attorney's fees, but they didn't raise that in the lower court. They raised it for the first time on appeal. They also, for the first time on appeal, say, she spent too much time on this case. They never raised that with the court. Kennedy, what did they raise in opposition to the attorney's fees application? That the case was not meritless, that they had established a prima facie case, that they were entitled to proceed against the State court jurist and the California Department of Justice. In fact, as to the California Department of Justice, initially they said, yes, we can bring this lawsuit because all we're seeking is prospective injunctive relief. And then later, in a notice of a rhatm of legal argument, they say, oops, no, no, no, you're right, we can't bring that. But we don't we could substitute the head of the Department of Justice to seek the relief we want, but we don't know how to do that. And that was just a constant, a constant thing of what we had to deal with in this case. And it was – it's been four years since we've been here on the same things. And it's just – we understand that in order to award 1988 fees, it is a high hurdle for the defendants to jump to get those established. And the district court made very specific findings as to why she was awarding these fees, and I don't believe Judge Behr took this lightly at all. Okay, you're down to your last 20 seconds. Anything else you want to say to this audience? Thank you, Your Honor. Very good. We'll hear from the county. Thank you, Your Honor. Good morning, Your Honors. My name is Anita Susan Brenner. I'm with law offices of Torres & Brenner here in Pasadena, and we are outside counsel for the County of Los Angeles and its employees. In this case, we represent on Elwood v. Moran, the County of Los Angeles and two social workers sued in their public capacities, Ann Wellman and Barbara Dallas. And in Elwood v. Drescher, we represent a young attorney named Judy Hutchinson, who is a county employee but was sued in her individual capacity and for punitive damages. Obviously, we have been up to another panel of this court, and the motions to dismiss in both cases were affirmed on appeal. I would submit that the district court did not abuse its discretion in awarding attorney's fees. In particular, my clients are basically peripheral to the sets of issues briefed in these hundreds of paragraphs of complaints and hundreds and hundreds of records before the court. Well, refresh my recollection. On what basis were these defendants dismissed? These defendants were dismissed with respect to Wellman, Dallas, and the county on the Elwood v. Moran case because there was no factual basis. There were insufficient facts alleged to prove up the theory of conspiracy, as alleged, and the district court rejected my argument with respect to the statute of limitations. Right. But in other words, as I recall, the county defendants, you didn't have the same Rooker-Feldman or Younger abstention dismissals. No. These were on the merits one way or the other. That's correct. Basically, there were numerous opportunities to amend, and there's a lengthy reporter's transcript of the oral argument before the district court where the district court asked counsel for the plaintiffs to go paragraph by paragraph, tell me which paragraphs allege anything about the county social workers. She listed four or five, and they went paragraph by paragraph, and none of them sufficed. With respect to Judy Hutchinson in the second case, Elwood v. Drescher, which arose in the middle of Elwood v. Moran, suddenly we were all served with this new complaint, which surprisingly named as a defendant one of the counsel in Elwood v. Moran. In that case, Judy Hutchinson was, the sole allegations against her were that she failed to return phone calls, and that on a particular day, some state judges, two of them, walked through a door, and she was beckoned and followed them into the door, and it was, Judge Baird found, and I would submit correctly so, that this was insufficient to establish a civil rights violation based on a theory of conspiracy under Woodrum, and in particular, at that hearing and in the hearings with respect to attorney's fees, we did point out that Ms. Baird is intimately familiar with the facts of Woodrum and the requirements of Woodrum, because she was counsel for parties in that case. So it was clear in this case that Time has expired, too, but you should wrap up quickly. Two things. Counsel mentioned 49A, the state actions. Judge Baird did not award attorney's fees on the 49A, so it's irrelevant. Secondly, my case was never, she states, my case was never frivolous in the first place, yet Judge Baird and the Ninth Circuit found that these claims against my clients were groundless, and finally, my client was not part of any efforts to enforce judgments. Thank you, Your Honor. Thank you. Mr. Perkis. You're going to talk to us about enforcement in two minutes. We'll give you two minutes. Okay. Yes, Your Honor. My name is Bob Perkis, and I represent Justice Moran and Robert Drescher in case numbers 0555724 and 0555727, and this deals with the motion in which the defendant, or I should say plaintiff, Ellwood, in fact, asked for attorney fees against us. In this particular case, that was denied. The basis of her denial, or I'm sorry, the basis of her appeal here is abuse of discretion. However, if you take a look at what happened in the underlying case, you see there was no abuse of discretion, there was no unnecessary work that we caused on the plaintiff. Because if you take a look at exactly what we did, we did just a very minimal execution of enforcement in this case. We did two OEXs, both of them done at the same day, one in each case, so we obviously minimized the amount of effort and time, and then we did two levies. And that was it. What happened after that all is a result of what Ms. Ellwood did in reacting to that, and what she did was, in fact, she made a ---- Roberts. She resisted. I'm sorry? She resisted. She resisted. But unfortunately, her resistance caused us to have to respond. Her first resistance was a claim of exemption. The problem is, is when you make a claim of exemption, a couple of things happen. One is you assume, from our side, that you only make a claim of exemption if, in fact, there are assets that were actually levied on. If there are no assets there, there's no basis for a claim of exemption. So we, in fact, filed an opposition to the claim of exemption. If we hadn't done that, we would have been ---- we would have lost any lien that was ---- that resulted from the levy. So our response was in response to her claim of exemption. What it turned out to be, as we pointed out in our opposition, is that her claim was, in fact, premature. The Court agreed. Ms. Berry, at the hearing on February 22nd of 2005, agreed with them that, in fact, the claim was premature and, in fact, that she just couldn't let go of it. And that was really the problem. In other words, the cause of these motions was a result of her filing. Let me take your point. You're over time, unless the panel has any questions. I think we have your argument in hand. So thank you for your argument. Okay. I'm sorry. And the case just heard will be submitted. You used up all of your time on the opening, so we thank all of you for your presentations and your arguments. Your Honor, I just need to let the panel. I've done some heavy, heavy thinking on this. And I'm the one who advised my clients to go forward, and I thought I had done terrific briefing, and I stand by my briefing, and I don't think that anything I did was frivolous. But I can't – if you want to punish somebody, I want it to be me. I can't do this to my clients. Thank you, counsel. We understand your argument. All right. Thank you, Your Honor. Thank you, Your Honor. The case just heard will be submitted, and we will be in recess. Thank you. Thank you. All rise. The court will decide the case. Thank you, Your Honor. Thank you.
judges: Thomas, Gould, Schwarzer